June, 1840.

Peirson
v.
Smith.

## PEIRSON vs. SMITH.

The " Act to Prevent Usury," passed May 15, 1837, applies to contracts made and matured before said act went into effect, but prosecuted after the act became operative, so far, at least, as to authorise a defendant at law to call upon the plaintiff to testify as to the usury under the provisions of the 2d section of said act.

Where notes were executed and matured in 1836, but not prosecuted until November, 1837, the defendant could avail himself of a defence of usury under the act of May 15, 1837, and call upon the plaintiff as a witness to prove the usury.

If the defendant, under misinformation of his rights and of the law, neglects to make such a defence at law, he will obtain no aid from this court ; as the consequences of repairing the defendant's neglect at law, would be to deprive the plaintiff at law of the whole money lent.

The " Act to Prevent Usury," passed May 15, 1837, does not contemplate that the court of Chancery *shall* take jurisdiction of questions of usury, when there has been a suit at law and an adequate remedy at law, unless, in the ordinary cause, the court would take jurisdiction of other questions similarly situated. In this respect the statute leaves the jurisdiction of the court where it found it. It never intended to make any distinction between usury questions and other questions *after* a trial at law, or an opportunity for a defence at law.

THE bill in this case sets forth the execution of three notes for $233 33 each, by B. E. Robinson to the defendant, signed by the complainant as surety. The notes were all dated June 27, 1836, and payable three months after date. The bill charges that there was usury in the notes, and that time of payment had been given by the defendant to Ro-

binson, without the knowledge or consent of the complainant, and that the complainant could not prove the usury or the giving of time by any person except the defendant and Robinson. Suits at law had been commenced on the notes, in the name of the defendant as plaintiff, against the complainant and Robinson, which suits were commenced in November, 1837. The complainant pleaded the general issue, and did not give notice of a defence of usury. The complainant filed his bill to stay those suits, and have the notes cancelled as to him. A demurrer is interposed as to so much of the bill as relates to the charge of usury; and an answer as to so much as relates to giving time. The answer of the defendant on oath, is waived. The complainant alleges as a reason why he did not make affidavit of the defence of usury, and call the defendant as a witness to prove it, that he was advised, and insists, that the law of 1837, in relation to such defences, did not apply to these notes. The argument and hearing is now upon the demurrer.

*Nelson Ford*, for complainant.

*Seth E. Sill*, for defendant.

THE VICE CHANCELLOR. There are several questions arising under the points presented by this demurrer.

1st. Does the " Act to Prevent Usury," passed May 15, 1837, apply to these notes so as to enable the defendants in the suit at law thereon, to avail himself of the provisions of the 2d section of said act, by way of defence to such suit?

These notes were executed and matured in 1836. They were not prosecuted at law until Nov, 1837.

At that time the act of May 15, 1837, had gone fully into operation. The second section of that act provides that " whenever, in an action at law, the defendant shall plead or give notice of the defence of usury, and shall verify the truth of his plea or notice by affidavit, he may, for the purpose of proving the usury, call and examine the plaintiff as a witness, in the same manner as other witnesses may be called and examined." The provisions of this section are general. It applies to all actions at law where the defendant pleads or gives notice of the defence of usury, verified in the mode pointed out by the section. This provision must therefore be deemed to apply to notes executed and maturing *before* the law went into operation, as well as to notes executed and maturing afterwards. It is a provision only affecting the remedy and the evidence. It does not affect or impair the *obligation* of the contract; and it must be deemed within the spirit of all of our judicial decisions to be constitutional. It is not, in terms, limited to contracts made and maturing after the law had force. In terms, it applies to previous as well as future contracts; and it must be deemed to apply to these notes, which, though made and matured before the law was in force, were not sued until afterwards. The defendants at law could therefore, under this statute, have set up their defence of usury, and called upon the plaintiff to be examined as to it.

But the next question is, were they bound to do so? Was the surety bound to select the usurer as a witness, when he could in this court call upon the person who submitted to the usury?

It is a general rule that when a party is sued at law, he must avail himself of his defence at law, if

the principles by which courts of law are governed, <span>June, 1840.</span>
will admit of it. If a defeneant cannot prove his de-
fence at law, and has testimony to prove it not ad-
missible in courts of law, but which he can use in
equity, he can then come into a court of equity for
relief, upon proper allegation of the circumstances.
And so are all the cases. In this case, however, the
defendant at law had a defence under the statute
of May 15, 1837, and under that statute could have
called the plaintiff as a witness to prove it. He neg-
lected to take the necessary preliminary steps to en-
title him to call upon the plaintiff. Having been
negligent of his defence at law, he can hardly come
here to ask the aid of this court to repair the conse-
quences of his neglect or ignorance. If he had made
every legal effort to substantiate his defence at law,
and failed from causes beyond his own control, under
certain circumstances he might have been heard here.
But he cannot be heard here, after neglecting his
means of defence at law. Neither, I apprehend, is
it a sufficient excuse that the defendant at law and
the complainant in this court, was advised and be-
lieved that he had no defence under the act of May
15, 1837. In some cases, perhaps, this excuse might
be considered sufficient. But in this case, the de-
fence is usury, the consequence of which goes to the
loss of the whole money loaned. The statute gives
the defence. The party has a right to avail himself
of it; and if he proves it, the judgment of the court
must follow the requirements of the legislature.
The act has pointed out how the suffering party
could prove it by the oath of the usurer himself.
The defendant at law has not chosen to avail himself
of this proof. It is fair to presume that he expected

Peirson
v.
Smith.

to prove it otherwise, or that he did not rely upon the defence. Or, if he was ignorant or misinformed, this court will hardly, upon the principles upon which it always acts, excuse his ignorance so as to enable him to deprive the lender of the money actually lent. The defendant at law comes into this court with something like this language : " I had a defence at law and means of proving it at law, which defence would have avoided my entire obligation ; but, owing to mistake or misinformation, I did not resort to it. I now ask this court to overlook my mistake, and permit me to institute proceedings here which will deprive the lender of even the money lent." This court would say to him : " It is true the notes you gave were void by statute. You had by statute a right to insist upon this defence, and was furnished with the means of proving it ; but there is a moral obligation upon you to be bound by your contract to the extent of the money loaned upon it ; and if you do not avail yourself of the defence which the statute gives you, we will not excuse your error, unless you do what is morally just, i. e. pay or secure the money actually lent."

The statute above referred to, also (3d section) provides " that every person offending against the provisions of the usury laws or of this act, may be compelled to answer on oath, any bill that shall be exhibited against him in the court of Chancery, for relief or discovery, or both." And the 4th section provides that whenever any such bill is filed, it shall not be necessary for the borrower to pay or offer to pay any of the interest or principal loaned.

It has been urged that this statute renders it imperative upon the court of Chancery to take juris-

diction of usury questions under any and all circumstances. I apprehend this is not the fair construction of the legislative intention. The rules governing the court of Chancery in relation to usury questions, where the borrower came into court for relief, were well known. The borrower was compelled by such rules, to pay or secure the amount of money actually loaned, before he could receive the aid of the court in any way, or even before the defendant could be compelled to answer. The legislature intended to abrogate this rule, and throw the court of Chancery open to entertain these questions like every other, without imposing upon the complainant or borrower any condition of paying the amount actually loaned. But I apprehend the legislature did not intend to institute any different rule as to jurisdiction, than prevails in other cases, independent of the above question of paying the money loaned. They did not intend that the court of Chancery should take jurisdiction when there was an adequate remedy or an adequate defence at law; but they meant to leave it upon the same principles which govern other cases. In the case now before us, the legislature have provided for proof of the defence at law. If the defendant at law neglects to avail himself of it, and it being an adequate defence at law, he cannot, after such neglect, come into the court of Chancery to set it up. In this case, the payee of the notes was plaintiff in the suit at law. He could be examined as a witness. If the notes had been transferred to a third person subsequent to July 4, 1837, or subsequent to their maturity, there would or might have been reasonable ground for the interference of this court. Indeed, there might have been in this very case, if procee-

30

dings had been instituted here before the suit at law was commenced. But the court of law having first acquired jurisdiction, and the defendant at law having an adequate defence in that court, and not having availed himself of it, cannot be heard here on this question. The demurrer must therefore be allowed with costs.